IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RUSSEL N. GATCH, # 12597-078, )
)
        Plaintiff, )
)
vs. ) Case No. 13-cv-1168-MJR
)
JEFFREY S. WALTON )
and ROBIN V. BRYSON, )
)
        Defendants. )

# MEMORANDUM AND ORDER

**REAGAN, District Judge:**

    Plaintiff, an inmate in the United States Penitentiary at Marion ("Marion"), brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Plaintiff is serving a 240-month sentence for Attempted Enticement of a Person Under the Age of 18 to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. § 2422(b).[1] *See Gatch v. United States of America*, Case No. 09-cv-770 (motion pursuant to 28 U.S.C. § 2255) (E.D. Tex., Doc. 20).[2] The "criminal sexual activity" referenced by the indictment consisted of using a computer with access to the Internet in an attempt to violate Texas Penal Code § 22.021, Aggravated

---

[1] 18 U.S.C. § 2422(b) states: "Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life."

[2] The Court has consulted the Public Access to Court Electronic Records ("PACER") website (www.pacer.gov) for information regarding Plaintiff's conviction and sentence. *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases).

Sexual Assault of a Child, and Texas Penal Code § 21.11, Indecency with a Child (Doc. 1 in criminal case, No. 06-cr-167 (E.D. Tex.)).

Plaintiff brings this action seeking an order to require the Federal Bureau of Prisons ("BOP") to allow him to use the prison's electronic public messaging service ("TRULINCS"). Access to this method of correspondence with persons outside the prison is generally available to federal prisoners. However, Defendant Walton (Marion Warden) has prohibited Plaintiff from using this system based on his offense conduct (Doc. 1, p. 2). Plaintiff asserts that Defendant Walton's decision to deny him this privilege was "arbitrary and capricious," when other inmates with similar conduct are allowed to use electronic messaging. *Id.* In addition, he protests the decision as discriminatory and a violation of his due process rights (Doc. 1, pp. 5, 8, 10).

In the Administrative Remedy documents attached to the complaint, Plaintiff points out that he has never had a disciplinary sanction that would justify the denial of electronic messaging privileges (Doc. 1, p. 4). He further argues that there is no chance for him to abuse the electronic mail system to contact the "victim" of his offense, who was in fact an undercover law enforcement officer and not a minor (Doc. 1, p. 5).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant. After fully considering the allegations in Plaintiff's complaint, the Court concludes that Plaintiff has failed to state a cognizable claim for violation of his constitutional rights. Therefore, this action is subject to summary dismissal.

## A. Program Statement Number P5265.13

Defendant Walton's response to Plaintiff's Administrative Remedy asking for access to the TRULINCS program (Doc. 1, p. 6) references BOP Program Statement Number P5265.13, which governs the Trust Fund Limited Inmate Computer System (TRULINCS) – Electronic Messaging.[3] This policy states, in pertinent part, "Use of the TRULINCS is a privilege; therefore, the Warden or an authorized representative may limit or deny the privilege of a particular inmate." PS P5265.13, § 2, p. 2. Section 3 governs "TRULINCS Restrictions," and provides that if an inmate is excluded from the program, he must (with certain exceptions not relevant here) be notified in writing of the specific reason for his exclusion. PS P5265.13, § 3, p. 3. Further, "An inmate's exclusion from program participation must be based on his/her individual history of behavior that could jeopardize the legitimate penological interests listed above. Inmates must not be excluded from program participation based on general categorizations of previous conduct." PS P5265.13, § 3a, p. 3. Examples of personal history which would justify exclusion include "soliciting minors for sexual activity, or possession/distribution of child pornography through the Internet or other means," or "using computers/email/Internet or other communication methods as a conduit for committing illegal activities[.]" *Id*. Inmates convicted of sex offenses are not categorically excluded from participation. As Defendant Walton described the guidelines, "Only inmates whose offense conduct or personal histories include using electronic messaging to solicit or accomplish offensive conduct with a victim should be restricted" (Doc. 1, p. 6).

Under this policy and guidelines, it appears that Defendant Walton's denial of Plaintiff's request to participate in TRULINCS was not arbitrary or capricious, but was based on

---

[3] A link to this document can be found at the BOP Policy Locator web page: http://www.bop.gov/DataSource/execute/dsPolicyLoc (last visited Dec. 3, 2013). For brevity, the Court shall refer herein to this Policy Statement as PS P5265.13.

the above policy and on Plaintiff's own personal history of "attempt[ing] to entice and/or solicit a minor, by exchanging sexually explicit pictures of [his] penis and by arranging a meeting" over the internet (Doc. 1, p. 6). The policy and guidelines quoted by Defendant Walton give him discretion to restrict Plaintiff from using TRULINCS based on this offense conduct. More to the point, not every denial of a "privilege" (such as access to TRULINCS) amounts to a constitutional violation.

**B. Rights to Association and Communication**

Prison inmates retain certain First Amendment rights during their incarceration, however, reasonable restrictions on those rights have withstood constitutional scrutiny. As the Supreme Court has observed:

> The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. . . . [citations omitted]. And, as our cases have established, freedom of association is among the rights least compatible with incarceration. [citations omitted]. Some curtailment of that freedom must be expected in the prison context.

*Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (restrictions on inmates' visitors were rationally related to legitimate penological objectives and did not violate the Constitution).

The ability of prisoners to communicate with outsiders through the U.S. mail enjoys substantial protection. *See Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) (First Amendment "applies to communications between an inmate and an outsider"). Thus, prisoners have a First Amendment right both to send and receive mail in communication with private individuals outside prison, as well as to correspond with the courts and attorneys. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). However, prisoners' use of other means of communication is not guaranteed.

For example, there is no constitutional right to unlimited telephone privileges.

*See Sandin v. Connor,* 515 U.S. 472 (1995). Thus, regulations limiting telephone use by inmates have been sustained routinely as reasonable. *See*, *e.g.*, *Arsberry v. Illinois*, 244 F.3d 558, 564 (7th Cir. 2001); *Pope v. Hightower*, 101 F.3d 1382, 1384-85 (11th Cir. 1996); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994); *Benzel v. Grammar*, 869 F.2d 1105, 1108 (8th Cir. 1989); *Martin v. Tyson*, 845 F.2d 1451, 1458 (7th Cir.1988); *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir.1986); *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir.1982) (inmates have no right to unlimited telephone use).

A prison policy such as the one governing TRULINCS access, which may restrict a prisoner's constitutional rights, must be reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Courts consider four factors in making this "reasonableness" inquiry: (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether inmates have an alternative means of exercising the right; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights. *Id*. Here, PS P5265.13 has an obvious connection to the interests of protecting the public and maintaining prison security, and Plaintiff's past conduct directly relates to the improper use of electronic communications. Plaintiff has other alternative means of communication available to him. On the other hand, allowing Plaintiff to use TRULINCS would involve the use of prison resources to screen or monitor his electronic communications in order to ensure that safety and security concerns are not jeopardized. Prison officials are afforded substantial deference in making decisions about what actions or circumstances present a threat to prison security and inmate rehabilitation. *Pell v. Procunier*, 417 U.S. 817, 827 (1974). In light of this, Defendant

Walton's denial of Plaintiff's request to use the TRULINCS system does not amount to an unconstitutional infringement of his right to communicate with persons outside the prison.[4]

Plaintiff's First Amendment right to communication or association has not been impermissibly denied. He still has the ability to communicate with outsiders via regular mail, and presumably may receive visitors. It appears that he also has telephone privileges (the complaint did not mention any telephone restrictions). Although letter-writing may not be as efficient a means of communication as using the electronic mail service, the Constitution does not require that prison officials choose the least restrictive alternative. *Thornburgh v. Abbott,* 490 U.S. 401, 411 (1989); *see also Arsberry v. Illinois*, 244 F.3d 558, 564-65 (7th Cir. 2001) (high price of prison telephone calls that arguably curtail visiting by families who live far from prisons does not violate Fourteenth Amendment due process rights).

## C. Due Process

The protections of the Due Process Clause come into play only if the claim involves deprivation of a protected interest in life, liberty, or property. As discussed above, a prisoner has no constitutionally protected interest to have access to electronic communications. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (a liberty interest is created only where prison

---

[4] Other courts that have considered similar claims have come to the same conclusion. *See*, *e.g.*, *Solan v. Zickefoose*, No. 13-1860, 2013 WL 3481772 (3d Cir. June 25, 2013) (inmate barred from using TRULINCS after misuse of computer system had no First Amendment, Equal Protection, Due Process, or Administrative Procedure Act claim); *see also Green v. Maye*, No. A-12-CA-065, 2012 WL 1982249 (W.D. Tex. June 1, 2012) (no due process or equal protection violation for denial of TRULINCS access to prisoner who ordered a book on computer hacking); *Hammonds v. Fed. Bureau of Prisons*, No. 11-CV-578, 2012 WL 759886 (N.D. Tex. March 7, 2012) (Administrative Procedure Act does not confer jurisdiction for court to enjoin BOP from denying inmate access to TRULINCS, based on offense conduct of enticement of minor to engage in sexual activity and other offenses); *Parisi v. Lappin,* No. 10-40030, 2011 WL 1045016, at *2-3 (D. Mass. Mar. 18, 2011) (Program Statement 5365.13 is reasonably related to legitimate penological interests to protect the public and reduce crime); *Dunlea v. Fed. Bureau of Prisons,* No. 10-cv-214, 2010 WL 1727838, at *2 (D. Conn. Apr. 20, 2010) (no violation of prisoner's constitutional or federally protected rights when warden refused her TRULINCS privileges because her conviction involved the use of a computer to commit her crimes), *abrogated on other grounds by Analytical Diagnostic Labs, Inc. v. Kusel,* 626 F.3d 135 (2d Cir. 2010).

regulations act to protect prisoners from an "atypical or significant hardship . . . in relation to the ordinary incidents of prison life."); *see also Jones v. Cross*, 637 F.3d 841, 846 (7th Cir. 2011) (BOP regulations do not give rise to a protected liberty interest). Moreover, Plaintiff was given notice and an explanation of the decision to restrict him from use of TRULINCS, and he appealed the decision using the BOP's administrative review process. He has no cognizable due process claim.

**D. Equal Protection**

Plaintiff suggests that he has been denied equal protection because other inmates with "similar" offense conduct are permitted access to TRULINCS. However, he does not point to any specific examples of other prisoners who have a history of attempting to exchange sexually explicit photographs with minors over the internet, or attempting to arrange a meeting with a minor for illicit activity, yet have been allowed to use TRULINCS.

Plaintiff fails to state a cognizable equal protection claim as a "class of one." The complaint does not show that Plaintiff was singled out for different treatment for no rational reason. See *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (plaintiff alleging class-of-one equal protection claim must plead that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"). In his final Administrative Remedy Appeal, Plaintiff raised for the first time a claim that he was being discriminated against because he is gay, not because of his offense conduct (Doc. 1, p.10). However, he did not include this theory in his statement of claim. Aside from this bald assertion, Plaintiff includes no factual allegations indicating that straight inmates with the same history of offense conduct have been allowed to use TRULINCS while he has been denied the privilege. In any case, Defendant Walton articulated a rational basis, consistent with the BOP's program

statement and guidelines and based on Plaintiff's individual history of offense behavior, for his decision to deny Plaintiff access to TRULINCS. Plaintiff has no equal protection claim.

To summarize, Plaintiff's complaint does not present a constitutional claim upon which relief may be granted regarding the denial of his access to the TRULINCS electronic messaging system. Accordingly, this action shall be dismissed with prejudice.

**Disposition**

For the reasons stated above, this action is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.

Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467. Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: December 5, 2013**

                                          s/ MICHAEL J. REAGAN
                                          United States District Judge